DANIEL J. BRODERICK, #89424
Federal Defender
MICHAEL PETRIK, Jr., #177913
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone: (916) 498-5700

Attorneys for Mr. Garcia

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) No. 11-290 LKK |
|---|---|
| Plaintiff, | ) DEFENDANT'S NOTICE OF MOTION AND ) MOTION TO DISMISS THE INDICTMENT |
| v. | ) TOGETHER WITH MEMORANDUM OF ) POINTS AND AUTHORITIES IN SUPPORT |
| DANIEL RICHARD GARCIA, | ) |
| Defendant. | ) Date:  To Be Designated ) Time:  9:15 a.m. ) Judge: Hon. Lawrence K. Karlton |

TO: BENJAMIN B. WAGNER, United States Attorney
    MICHAEL D. ANDERSON, Assistant United States Attorney

   PLEASE TAKE NOTICE that defendant, Daniel Richard Garcia, pursuant to the U.S. Const., Fed. R. Crim. P., Fed. R. Evid., and all other applicable statutes, case law, and local rules, moves this Court to dismiss the indictment.

Dated: July 18, 2011                  Respectfully submitted,

                                       DANIEL J. BRODERICK
                                       Federal Defender

                                       /s/ M.Petrik
                                       _____
                                       MICHAEL PETRIK, Jr.
                                       Assistant Federal Defender

Motion To Dismiss Indictment          1                         11-290 LKK

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**STATEMENT OF FACTS**

On July 7, 2011, the Grand Jury returned a four count indictment that charged Mr. Garcia with malicious use of explosive materials in count one,[1] possession of a destructive device during and in relation to a crime of violence in count two,[2] and two counts of possession of an unregistered destructive device in counts three and four.[3]

Count one alleges that Mr. Garcia damaged "a building and vehicle used in interstate commerce, and in an activity affecting interstate commerce" by means of an explosive. Count one specifically identifies the building as "an apartment building," and the vehicle as a "Chevrolet Tahoe SUV." Count two alleges that Mr. Garcia used a destructive device, "a pipe bomb,"[4] to commit the offense alleged in count one. Count one sustains the viability of count two: if count one does not pass scrutiny for any reason, count two does not survive.

**II.**

**THE COURT SHOULD DISMISS COUNTS ONE AND TWO BECAUSE COUNT ONE EXCEEDS THE BOUNDS OF THE COMMERCE CLAUSE AS APPLIED IN THIS CASE**

Section 844(i) prohibits damage or destruction by means of an explosive to "any building [or] vehicle ... used in interstate or foreign commerce or in any activity affecting interstate or foreign

---

[1] 18 U.S.C. § 844(i).

[2] 18 U.S.C. § 924(c)(1)(A).

[3] 26 U.S.C. § 5861(d).

[4] The police report alleges the explosive is a gunpowder filled length of galvanized pipe taped to propane canisters.

Motion To Dismiss Indictment             2                        11-290 LKK

commerce...." 18 U.S.C. § 844(i). In <u>Jones v. United States</u>, 529 U.S. 848 (2000), the Supreme Court interpreted the that statute. <u>Id.</u>, at 853. In <u>Jones</u>, the defendant threw a Molotov cocktail into the residence of his cousin. <u>Id.</u>, at 851. The subsequent fire severely damaged the residence. <u>Id.</u> The defendant argued in the lower courts that charging him under § 844(i) exceeded the extent of the powers granted to Congress under the commerce clause of the Constitution.[5] <u>Id.</u>, at 851-852. The Supreme Court agreed with the defendant, and reversed his conviction, because "§ 844(i) does not reach an owner-occupied residence that is not used for any commercial purpose...." <u>Id.</u>, at 852. Specifically, the Supreme Court concluded that:

> § 844(i) is not soundly read to make virtually every arson in the country a federal offense. We hold that the provision covers only property currently used in commerce or in an activity affecting commerce. The home owned and occupied by [the] cousin was not so used-it was a dwelling place used for everyday family living. As we read § 844(i), Congress left cases of this genre to the law enforcement authorities of the States.

<u>Id.</u>, at 859. In so holding, the Supreme Court emphasized that the cousin "did not use the residence in any trade or business." <u>Id.</u>, at 856. In addition, the Supreme Court rejected the notion that use of supplies or parts in the construction of the cousin's residence that moved in interstate commerce would somehow trigger a violation of § 844(i). <u>Id.</u>, at 857.

In this case, count one charges damage and destruction to an apartment building and a Chevrolet Tahoe SUV by means of explosive. No allegation exists in the indictment that the Tahoe's owners used it in interstate or foreign commerce, or that its use in any way affected

---

[5] U.S. Const., Art. I, § 8, cl. 3.

1  interstate or foreign commerce.[6]  Indeed, no such allegation exists
2  because the government cannot substantiate it: the Tahoe is a privately
3  owned vehicle that its owners use for everyday, family driving.
4  Applying 21 U.S.C. § 844(i) to the damaging or destruction of such a
5  vehicle clearly exceeds the bounds of Congress' authority under the
6  commerce clause.

7  Finally, because the government indicted in count one for "an
8  apartment building" and a "Chevrolet Tahoe SUV," the Court should
9  dismiss the entire count.  The government could have indicted in the
10 alternative, as Congress wrote the statute.  21 U.S.C. § 844(i).  The
11 government did not.  As a result, the government has put this Court in
12 the difficult position of guessing what evidence the government
13 presented to the Grand Jury, what instructions the government gave to
14 the Grand Jury to secure an indictment in the conjunctive, and how much
15 weight the Grand Jury gave to evidence about the apartment building in
16 its decision to return an indictment for the Tahoe.  In other words,
17 this Court cannot tell how the Grand Jury reached indictment for "an
18 apartment building" and a "Chevrolet Tahoe SUV:" an important inquiry
19 since indictment for the Tahoe clearly contravenes constitutional law.

### III.

### THE COURT SHOULD DISMISS COUNTS ONE AND TWO BECAUSE COUNT ONE IS DUPLICITOUS

23  "An indictment is duplicitous where a single count joins two or
24 more distinct and separate offenses." United States v. Garcia, 400 F.3d

---

[6] This omission contrasts starkly with the specific allegation of damage to "an apartment building" contained in the indictment.  See Russell v. United States, 471 U.S. 858, 862 (1985) (apartment building used in activity affecting interstate commerce because defendant received rent from tenants).

816, 819 (9th Cir. 2005) (quotations omitted).  "One vice of duplicity is that a jury may find a defendant guilty on a count without having reached an unanimous verdict on the commission of a particular offense."  Id. (quotations omitted).

In this case, the government has clearly alleged two separate offenses in count one: the bombing of "an apartment building" and the bombing of a "Chevrolet Tahoe SUV."  To avoid the prospect of a jury finding Mr. Garcia guilty without reaching an unanimous verdict on each of the alleged offenses, the Court should dismiss it.

## IV.

### THE COURT SHOULD DISMISS COUNTS THREE AND FOUR BECAUSE 26 U.S.C. § 5861 VIOLATES THE SECOND AMENDMENT

"[T]he Second Amendment confer[s] an individual right to keep and bear arms."  District Of Columbia v. Heller, 554 U.S. 570, 595 (2008). Only two exceptions to that inalienable right exist: legislatures may prohibit possession of weapons by felons, in sensitive areas such as schools, and may govern the sale of weapons; and, legislatures may ban dangerous and unusual weapons not in common use at the time of the drafting of the Second Amendment.  Id., at 626-627.

In this case, neither of the two exceptions to the Second Amendment apply.  The government does not allege that Mr. Garcia is a felon, that he possessed the explosive in a sensitive area, or that he attempted to sell the explosive.  Explosives existed at the time the framers drafted the Second Amendment, and the people of the 18th

century did not consider explosives unusually dangerous or novel.[7]  The Court should dismiss counts three and four because 26 U.S.C. § 5861 violates the Second Amendment.

## V.

## CONCLUSION

For the reasons stated above, and any others that may arise on hearing, Mr. Garcia respectfully requests that the Court grant his motions, and accord such other relief as it deems just.

Dated: July 18, 2011                    Respectfully submitted,

                                        DANIEL J. BRODERICK
                                        Federal Defender

                                        /s/ M.Petrik
                                        _____
                                        MICHAEL PETRIK, Jr.
                                        Assistant Federal Defender

---

[7] A Google search reveals that the British used gunpowder filled grenades against the Americans during the Revolutionary War, that both sides regularly fired gunpowder filled bombs from cannons at each other, and that the Americans tried to break the siege of New York Harbor by using a submarine (the "Turtle") to affix gunpowder filled bombs to British warships.  See http://grenadelauncher.com/; http://www.americanrevolution.org/artillery.html; http://en.wikipedia.org/wiki/Turtle_(submarine).  Furthermore, the Americans at first used home-made, gunpowder explosives because the British had restricted munitions factories in the colonies.  See http://grenadelauncher.com/.

Motion To Dismiss Indictment                    6                            11-290 LKK