UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

DANIEL RICHARD GARCIA,

        Defendant.

NO. CR. S-11-290 LKK

O R D E R

## I. INTRODUCTION

Defendant was charged with: (a) using an explosive device to damage a Chevrolet Tahoe SUV and an apartment building, in violation of 18 U.S.C. § 844(i) (Count 1); (b) using a pipe bomb in relation to Count 1, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 2); and (c) unregistered possession of pipe bombs, in violation of 26 U.S.C. § 5861(d) (Counts 3 and 4). Before the court are defendant's motions to dismiss the indictment, suppress evidence, and disclose Grand Jury proceedings.

For the reasons set forth below, the motions are **DENIED**.

1

**II.  DISCUSSION**

    **A.  Motions To Dismiss**

        **1.  Interstate Commerce**

It is a federal crime to damage or destroy, "'by means of fire or an explosive device,'" any property "'used ... in any activity affecting'" interstate commerce.  Jones v. U.S., 529 U.S. 848, 850 (2000), quoting 18 U.S.C. § 844(i).  The indictment here alleges that defendant damaged and destroyed a building and vehicle "used ... in an activity affecting interstate ... commerce."

Defendant, citing Jones, argues that the indictment's conclusory allegation – which simply tracks the language of the statute – is not sufficient to plead the interstate commerce element as it relates to the SUV.[1]  The government, citing U.S. v. Renteria, 557 F.3d 1003 (9th Cir. 2009), argues that the allegation is sufficient as is.

Defendant's argument is precluded by Renteria.  In that case, as here, defendant was charged in the indictment with destroying or damaging property with an explosive device, in violation of 18 U.S.C. § 844(i).  557 F.3d at 1005.  As here, the sole interstate commerce allegation was that the property was "'used in interstate and foreign commerce, and in an activity affecting interstate and foreign commerce,'" tracking the language of the statute.  Id. at

---

[1] Defendant does not challenge the sufficiency of the interstate commerce allegation as it relates to the apartment building, apparently conceding that such an argument would be precluded by Russell v. U.S., 471 U.S. 858 (1985) (an apartment building with rental units is used in interstate commerce for purposes of 18 U.S.C. § 844(i)).  See Motion To Dismiss at 4 n.6.

2

1006.

As here, the defendant argued that the conclusory interstate commerce allegation was not sufficient. <u>Id.</u> at 1006. The Ninth Circuit found that the allegation was sufficient. <u>Id.</u> Since this court is bound by <u>Renteria</u>, the interstate commerce allegation in the indictment before the court is sufficient.

### 2. Duplicity

"'An indictment is duplicitous where a single count joins two or more distinct and separate offenses.'" <u>U.S. v. Garcia</u>, 400 F.3d 816, 819 (9th Cir. 2005).[2] Duplicity "compromises a defendant's Sixth Amendment right to know the charges against him, as well as his Fifth Amendment protection against double jeopardy." <u>U.S. v. King</u>, 200 F.3d 1207, 1212 (9th Cir. 1999) (citations omitted).

Defendant, citing <u>Garcia</u>, argues that Count One is "duplicitous" by alleging two "separate" bombings, "the bombing of 'an apartment building,'" and "the bombing of a 'Chevrolet Tahoe SUV.'" The government, citing <u>U.S. v. Urrutia</u>, 897 F.2d 430, 432 (9th Cir. 1990), responds that Count One properly alleges only one bombing.

In fact, the indictment alleges only one offense – the bombing of a building and a vehicle – although it is pled in the conjunctive. The indictment uses a conjunctive pleading style that has been approved by the Ninth Circuit where, as here, the statute

---

[2] <u>Quoting</u> United States v. Ramirez-Martinez, 273 F.3d 903, 913 (9th Cir.2001). <u>See also</u>, United <u>States v. UCO Oil Co.</u>, 546 F.2d 833, 835 (9th Cir.1976) ("Duplicity is the joining in a single count of two or more distinct and separate offenses").

3

proscribes conduct in the disjunctive.  The statute here proscribes the use of an explosive to damage or destroy "any building, vehicle, or other real or personal property used in interstate or foreign commerce."  18 U.S.C. § 844(i).

According to the Ninth Circuit, "When a crime is denounced disjunctively in the statute, it may be pled conjunctively in the indictment.  When a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any of those acts conjunctively charged may establish guilt."  U.S. v. Urrutia, 897 F.2d 430 (9th Cir. 1990).  This conjunctive pleading is what the indictment in this case does.  Since the court is bound by Urrutia, it cannot dismiss the indictment as duplicitous based upon that pleading style.

### 3.  The Second Amendment

"The Second Amendment provides: 'A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.'"  District of Columbia v. Heller, 554 U.S. 570, 576 (2008), quoting U.S. Const., Amend 2.  However, not every type of weapon is "eligible for Second Amendment protection."  Id. At 622.  "[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns."  Id. at 625.[3]  The party challenging the

---

[3] Citing U.S. v. Miller, 307 U.S. 174 (1939) (upholding the ban against the interstate transportation of unregistered short-barreled shotguns).

4

constitutionality of a federal statute bears the burden of establishing its unconstitutionality. <u>Town of Lockport, New York v. Citizens for Community Action at Local Level, Inc.</u>, 430 U.S. 259, 272-273 (1977) (in determining the constitutionality of a law, the Court "Grant[s] to these provisions the presumption of constitutionality to which every duly enacted state and federal law is entitled").

Defendant, citing <u>Heller</u>, argues that the statute upon which Counts Three and Four are based, 18 U.S.C. § 5861, violates his Second Amendment right to possess a pipe bomb. The government, also citing <u>Heller</u>, argues that Section 5861 constitutionally prohibits the unregistered possession of pipe bombs because they "are not weapons typically possessed by law abiding citizens."

Defendant has not made any showing that pipe bombs are protected by the Second Amendment. Indeed, defendant acknowledges that Congress "may ban dangerous and unusual weapons not in common use at the time of the drafting of the Second Amendment." But he makes no showing that pipe bombs are not dangerous or unusual, or that they were in common use when the Second Amendment was drafted. Defendant cites Internet websites for the proposition that "gunpowder filled grenades," "cannons," "gunpowder filled bombs," and "home-made, gunpowder explosives" were in common use during the Revolutionary War. It appears that defendant is arguing that since Revolutionary War grenades, bombs and the like, are "explosives," and pipe bombs are "explosives," then pipe bombs must be protected
////

by the Second Amendment.[4]

The showing that is required, however, is not what weapons were used by the combatants waging the Revolutionary War, but what arms the Constitution refers to in the Second Amendment. Defendant has made no showing that the Constitution protected the right of individual civilian citizens to wage war, or that it was referring to pipe bombs.

### 2. Motion To Suppress Evidence from Search Warrant

"The Fourth Amendment ensures that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" U.S. v. SDI Future Health, Inc., 568 F.3d 684, 694-95 (9th Cir. 2009). Accordingly, a search warrant may issue consistently with the Fourth Amendment, only upon a showing of "probable cause."

When the warrant is based upon information from an "informant," the court determines "whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." Illinois v. Gates, 462 U.S. 213, 230 (1983). The informant's veracity, reliability and basis of knowledge, "are all highly relevant in determining the value" of the informant's report. Id. (the court considers "totality-of-the-circumstances,"

---

[4] The court notes that nuclear bombs are "explosives" too.

6

rather than individual factors standing alone).

The Search Warrant in this case was granted by a California Superior Court Judge. This court, as the reviewing court, grants "great deference" to the issuing judge, and should only "'ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed'" based upon "'the totality of circumstances.'" U.S. v. Seybold, 726 F.2d 502, 503 (9th Cir. 1984).[5]

Defendant, citing U.S. v. Bishop, 264 F.3d 919, 924 (9th Cir. 2001) and Durham v. U.S., 403 F.2d 190, 195 (9th Cir. 1968), argues that the warrant should be suppressed because it was based upon an informant's tip that was uncorroborated and stale. The government, citing U.S. v. Mahler, 442 F.2d 1172 (9th Cir. 1971), argues that because the informant here - Jantina Reed – is a "victim," she is presumptively reliable, and that in any event, the police did corroborate her statements.

On May 27, 2011, according to Jantina Reed, she and her husband heard a loud bang outside their Phoenix Drive apartment. She told the police that they went outside to find the underside of their car on fire. The police later determined that the car had been pipe bombed, and that the blast had also left shrapnel in the exterior wall of their apartment building. The pipe bomb had been left under the car, taped to five propane cylinders, the police

---

[5] Quoting Illinois v. Gates, 462 U.S. 213 (1983) and Greenstreet v. County of San Bernardino, 41 F.3d 1306, 1309 (9th Cir. 1994).

7

1  determined.

2  Reed told the police that around December 2010, she and her husband moved out of the Quincey Street apartment they had previously shared with defendant Garcia because of unspecified concerns about Garcia's behavior. At the time she moved out, she noted that Garcia had "propane cylinders" in his garage. Shaffer Aff. at 5 (Dkt. 16-1 at 8). After Reed moved out, she returned to the apartment to retrieve a car [not the SUV] that she had left in the driveway.

At that time, Garcia, who was newly home from the Solano County Jail, "threw garbage on her vehicle and threatened to 'blow up your car,'" according to Reed. She reported that he also said, "'You know I have the sh*t here or I can get it on the internet.'" Shaffer Aff. at 4 (Dkt. 16-1 at 7). On at least three occasions, according to Reed, Garcia "came to her residence and created a disturbance," getting arrested on one of those occasions. Id.

Shaffer, the investigating officer, confirmed that Reed's car had been bombed by a pipe bomb which had also left shrapnel in Reed's apartment building, that Garcia lived at the Quincey Lane home, that he had been arrested (for drunk driving) in front of Reed's Phoenix Drive apartment, that the propane cylinders were readily available from a nearby Home Depot and that other materials in the bomb were readily available on the Internet.

### a. Reed's Credibility and Reliability

Citizen witnesses, unlike paid informants, "are generally presumed reliable." Ewing v. City of Stockton, 588 F.3d 1218, 1223

8

(9th Cir. 2009). However, "the general proposition that private citizen witnesses or crime victims are presumed reliable does not 'dispense with the requirement that the informant ... furnish underlying facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator.'" Fuller v. M.G. Jewelry, 950 F.2d 1437, 1444 (9th Cir. 1991).[6]

In this case, Reed was the victim of the crime, and therefore presumptively reliable. Defendant makes no showing (or even allegation) to overcome this presumption. There is no showing (or allegation) of fabrication, acting out of spite or malice, or anything else. In Bishop, the case defendant relies upon, the informant *was* acting out of malice, and in fact it turns out some (not all) of his "tips" were outright lies. Yet, the Ninth Circuit did not suppress the warrant which was largely based upon his tips.

Moreover, the Search Warrant indicates that the police officer did corroborate at least some of Reed's statements. He corroborated her statement that she heard an explosion (in other words, it was not just a fire under her car), by locating shrapnel still embedded in the exterior wall of Reed's apartment; he corroborated Reed's statement that Garcia lived at the Quincy Lane address; and he corroborated Reed's statement that Garcia had been arrested in front of her new Phoenix Drive apartment. It is true that he didn't corroborate Reed's statement that Garcia said he

---

[6] Quoting People v. Ramey, 16 Cal.3d 263, 269, cert. denied, 429 U.S. 929 (1976).

9

would "blow up" her car, or that she saw propane cylinders in Garcia's garage (except to the degree those things were corroborated by the fact that her car was later blown up by a bomb made with propane cylinders).  Nonetheless, corroboration of imporant elements of her statement was made.

Finally, "reliability" is not the sole basis for granting or denying a search warrant.  The issuing judge considers the "totality of the circumstances," of which the witness's reliability is but one factor, however important. Here, the witness – Reed – tells the police: that Garcia, whose garage contains propane cylinders, threatened to "blow up" her car; that three times after that incident, Garcia harassed her at her new apartment, getting arrested once in the process; and that a few months later, someone blew up her car.  The police investigation later found the remains of propane cylinders among the after-effects of the explosion, and that Garcia had a juvenile record of arson and "use of a destructive device."

As for staleness, defendant's argument fails. The warrant was not issued solely on Reed's 5-months-old statement that she saw materials for making pipe bomb in Garcia's garage.  Rather, the police <u>found</u> the remnants of a pipe bomb under Reed's car immediately after the explosion. Reed's statement that she saw the materials in December 2010, standing alone, possibly didn't create probable cause that the materials were still in Garcia's garage five months later, but it did contribute to probable cause to believe that Garcia blew up her car, as he had promised to do.

Of course, a jury might find reasonable doubt in the above scenario, but the issuing judge had a substantial basis for finding probable cause to search Garcia's home in light of all the above circumstances.

### 3.   Motion To Disclose Grand Jury Proceedings

The court may authorize disclosure of Grand Jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury," Fed. R. Crim. P. 6(e)(3)(E)(ii), upon defendant's showing of a "particularized need" for the information, "which outweighs the policy of [grand jury] secrecy." Pittsburgh Plate Glass Co. v. U.S., 360 U.S. 395, 400 (1959).

Defendant argues that the criminal complaint fails to make sufficient allegations of "interstate commerce," again relying upon Jones v. U.S., 529 U.S. 848, 856 (2000), leading him to believe that the government may have misinstructed the Grand Jury.  The government argues that defendant has not shown a "particularized need" to disclose Grand Jury matter, citing Pittsburgh Plate Glass Co. v. U.S., 360 U.S. 395, 400 (1959), and that in event, the complaint was not reviewed by the grand jury.

#### a.   The SUV

According to the affidavit supporting the criminal complaint, after researching the "National Insurance Crime Bureau," the ATF Task Force Officer determined as follows: "The SUV was manufactured in Jacksonville, Wisconsin, therefore if the vehicle was received or possessed in the State of California it traveled or affected

11

interstate commerce." Criminal Complaint ¶ 54. The SUV was bombed in the City of Fairfield, California, and therefore the court infers that it traveled in interstate commerce sometime in the interim. There is no other indication in the complaint or the affidavit that the SUV had any other connection to interstate commerce.

There appears to be no doubt that at least prior to Jones, the past interstate transport of the SUV would suffice to establish the interstate commerce element. In Scarborough v. U.S., 431 U.S. 563, 564 (1977), the Court interpreted 18 U.S.C. § 1202(a), which criminalized the conduct of a felon who possessed a firearm "in commerce or affecting commerce." The Court found that the statute criminalized the "possession" of a firearm by a felon, so long as the firearm had a sufficient nexus to interstate commerce. The Court found "no indication that Congress intended to require any more than the minimal nexus that the firearm have been, at some time, in interstate commerce." Scarborough, 431 U.S. at 575 (my emphasis).[7]

Similarly, in U.S. v. Cortes, 299 F.3d 1030, 1037 (9th Cir. 2002), cert. denied, 537 U.S. 1224 (2003), the Ninth Circuit addressed the interstate commerce requirement of the federal car-

---

[7] U.S. v. Geiger, 263 F.3d 1034 (9th Cir. 2001), which the government relies upon, does not control the consideration of the SUV here. According to the Ninth Circuit in Geiger, a leased truck (wheels aside), is like an apartment building; they are both local parts of a national market that affects commerce. Therefore, under Russell, the bombing of a leased truck is covered by Section 844(i).

12

jacking statute. In that case, the defendant tried to hijack a federal government car belonging to an FBI agent. The statute covered vehicles that were "transported, shipped, or received" in interstate commerce. The Ninth Circuit applied the reasoning of Scarborough to find a sufficient connection to interstate commerce:

> When the government introduced the parties' stipulation that the 'blue 1996 Oldsmobile ... which was driven by Special Agent Whitman ... was manufactured in Kansas City, Kansas, in 1996 and was transported to the [FBI] in Los Angeles, California,' the government sufficiently tied this particular carjacking to interstate commerce. <u>No greater nexus between the carjacking and interstate commerce was required.</u>

Cortes, 299 F.3d at 1037 (emphasis added).

Defendant argues that after Jones, the SUV must be in "active" use in interstate commerce, and that the past interstate transportation of the SUV is insufficient. In fact, Jones (which involved the bombing of a church building) does say that when the statute requires that the property to be "used" in an activity affecting commerce,

> That qualification is most sensibly read to mean active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce. Although 'variously defined,' the word 'use,' in legislation as in conversation, ordinarily signifies 'active employment.'

13

<u>Jones</u>, 529 U.S. at 855.

Of course, this court is bound by <u>Jones</u>, as it is by <u>Scarborough</u>. The difficulty here is that defendant's argument can prevail only if <u>Scarborough</u> has been overruled, by <u>Jones</u> or otherwise. In fact, <u>Jones</u> does not mention <u>Scarborough</u>. In addition, the Ninth Circuit has specifically held that <u>Jones</u> did not overrule <u>Scarborough</u>, and that "absent the Supreme Court or our en banc court telling us otherwise," the Ninth Circuit will "follow <u>Scarborough</u> unwaveringly." <u>U.S. v. Alderman</u>, 565 F.3d 641, 643 (9th Cir. 2009), quoting <u>U.S. v. Cortes</u>, 299 F.3d 1030, 1037 n.2 (9th Cir. 2002).

This court is bound by <u>Jones</u> as well as <u>Scarborough</u>. Accordingly, the court finds that under <u>Jones</u>, it is not enough to find that property damaged by an explosive was manufactured from materials that traveled in interstate commerce. However, under <u>Scarborough</u>, if the completed item – as opposed to its constituent parts – is transported from its point of origin into another state, then that is a sufficient connection to interstate commerce.[8]

### b.  The Apartment Building

As for the apartment building, defendant's argument is precluded by <u>Russell v. U.S.</u>, 471 U.S. 858 (1985). In <u>Russell</u>,

---

[8] The court notes that <u>Jones</u> arose under 18 U.S.C. § 844(i), the statute at issue in this case, whereas <u>Scarborough</u> involved 18 U.S.C. § 1202(a), the "felon in possession" statute. The court believes that both cases are binding here because they both address what connection an item must have to interstate commerce before a federal statute can criminalize its possession (Section 1202(a)), or its destruction (844(i)).

14

defendant tried to burn down his own apartment building. He was convicted under the same statute – Section 844(i) – that defendant was indicted under in this case. Defendant argued that the apartment building was not in "interstate commerce," as does defendant here. The Supreme Court disagreed. Section 844(i) covered rental apartment buildings, it found, because "[t]he rental of real estate is unquestionably" an "'activity' that affects commerce." Russell, 471 U.S. at 862. Even looking at the local apartment rental market:

> We need not rely on the connection between the market for residential units and "the interstate movement of people," to recognize that *the local rental of an apartment unit is merely an element of a much broader commercial market in rental properties*. The congressional power to regulate the class of activities that constitute the rental market for real estate includes the power to regulate individual activity within that class.

Russell, 471 U.S. at 862 (emphasis added) (footnotes omitted); Gomez, 87 F.3d 1093, 1096 (9th Cir. 1996) ("to satisfy the jurisdictional requirement, the government needed to prove only that this building is in use in the rental market, which *per se* substantially affects interstate commerce").

Since there is no legal error incorporated into the criminal complaint – both the SUV and the apartment building have the requisite connection to interstate commerce – there is no basis for concluding that the government misinstructed the grand jury.

**CONCLUSION**

Defendant's motions (Dkt. Nos. 12, 16 and 17), are **DENIED.**

IT IS SO ORDERED.

DATED: October 3, 2011.

/s/ Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT